UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ANTHONY J. CEPARANO,

                              Plaintiff,

             -against-                                          **ORDER**
                                                                10-CV-2030 (SJF)(AKT)

THE COUNTY OF SUFFOLK,                                          **FILED**
THOMAS SALADINO (C.O. #1207), GEORGE                           IN CLERK'S OFFICE
PELLETIER (C.O. #1220), MICHAEL URBAN                          U S DISTRICT COURT E D N Y
(C.O. #1158), JAMES TOTTEN (C.O. #1094),
JAMES LEYKIS (C.O. #1153),                                     ★   DEC 13 2013   ★

                              Defendants.                      **LONG ISLAND OFFICE**
----------------------------------------------------------X

FEUERSTEIN, J.

        On May 4, 2010, incarcerated *pro se* plaintiff Anthony J. Ceparano ("plaintiff")

commenced this purported civil rights action pursuant to 28 U.S.C. § 1983 ("Section 1983")

against approximately four hundred and fifteen (415) defendants, including the County of

Suffolk (the "County"), accompanied by an application to proceed *in forma pauperis.* [Docket

Entry No. 1]. By order dated December 15, 2010, the Court granted plaintiff's application to

proceed *in forma pauperis*, dismissed the complaint *sua sponte*, and granted plaintiff thirty (30)

days to file an amended complaint. [Docket Entry No. 12]. On January 18, 2011, plaintiff filed

an amended complaint. [Docket Entry No. 15]. By order dated June 10, 2011, this Court

dismissed the amended complaint as to all defendants, except as to the following five defendants:

(1) James Leykis, C.O. #1153 ("Leykis"); (2) Thomas Saladino, C.O. #1207 ("Saladino"); (3)

George Pelletier, C.O. #1220 ("Pelletier"); (4) Michael Urban, C.O. #1158 ("Urban"); and (5)

James Totten, C.O. #1094 ("Totten") (collectively, the "individual defendants").[1] [Docket Entry

No. 16]. By order dated December 6, 2011, the County of Suffolk (the "County," together with

the individual defendants, "defendants") was added as a defendant. [Docket Entry. No. 41].

Now before the Court is defendants' motion for summary judgment. [Docket Entry No.

91]. For the reasons that follow, defendants' motion is GRANTED.

I.      Background[2]

Plaintiff's amended complaint contains a single paragraph as to each of the five (5)

individual defendants, asserting claims of excessive force and deprivation of property. Plaintiff's

amended complaint alleges, *inter alia*, that he was subjected to excessive force at the Suffolk

County Correctional Facility ("S.C.C.F.") by Leykis and Saladino, that Pelletier failed to protect

him from an assault by another inmate, and that Urban and Totten destroyed or deprived him of

his property. (Defs.' 56.1 Stmt. ¶ 1).

Specifically, plaintiff alleges that on November 5, 2007, "[a]fter spending two months on

crutches for a broken leg/hip, C.O. [Leykis] kicked my broken leg out from under me because I

didn't hear him call my name. C.O. #1131 told me I was 'lucky this officer was in a semi-decent

mood today or he would've beat the shit out of (me)." (Am. Compl. at 89). Plaintiff did not

inform the medical staff about Leykis's alleged behavior during a subsequent visit to the medical

---

[1]      In the amended complaint, plaintiff identifies defendants Saladino, Pelletier, Urban, and Totten
by badge number, and refers to the fifth defendant as "Tom Arnold." Am. Compl. at 89-94. By letter
dated August 4, 2011, plaintiff explained that "Tom Arnold" is a "pseudonym – a 'John Doe'" for a
correctional officer that "looks like actor Tom Arnold." [Docket Entry No. 20]. Pursuant to this Court's
order directing the Suffolk County Attorney's Office to ascertain the full name and badge number of the
unidenfitied defendant, the County submitted a letter on August 26, 2011, identifying "Tom Arnold" as
Corrections Officer James Leykis, Badge No. 1153. [Docket Entry No. 26].

[2]      The facts are taken from Plaintiff's Initial Narrative Statement ("Pl.' Narr. Stmt.") [Docket Entry
No. 28], Defendants' Narrative Statement ("Defs.' Narr. Stmt.") [Docket Entry No. 29], Defendants' Rule
56.1 Statement ("Defs.' 56.1 Stmt.") [Docket Entry No. 91-2], and my review of the record.

center, nor did plaintiff file a grievance in connection with this incident. (Defs.' Ex. A, ["Ceparano Dep."] at 69:3-24, 71:2-8).

According to plaintiff, on December 18, 2007, Saladino "grabbed my arm, yanked it through the bars, twisted it and threatened to break it for reaching for a Dixie cup on the med cart the nurse told me to take to take my medicine with." (Am. Compl. at 89). Plaintiff did not file a grievance in connection with this incident. (Ceparano Dep. at 80:20-81:11).

Plaintiff claims that on January 6, 2008, Urban "failed to save my lunch tray when I was off the tier. He went and got me baloney sandwich replacements, but threw them on the ground because he didn't like me telling an inmate, 'They forgot my lunch,' when asked. (He also destroyed my legal papers during a shakedown)." (Am. Compl. at 91; Defs.' 56.1 Stmt ¶ 2). Plaintiff did not file a grievance in connection with this incident. (Ceparano Dep. at 103:25-104:5).

Plaintiff alleges that on August 11, 2008, Pelletier "helped an inmate assault me. Pre-warned, he stood at the control box, watched the inmate run in my cell, do a 'drive-by,' and upon the inmate's signal leaving, threw my gate closed to prevent any retaliation on my part. He waved back to the inmate with a smile. (Because I have witnesses who told me.)." (Am. Compl. at 90-91). Plaintiff did not file a grievance in connection with this incident. (Ceparano Dep. at 94:3-12).

Plaintiff alleges the following against Totten:

> I had surgery 8/18/2009 to remove a cancerous growth. The stitches popped open, and medical never got them re-stitched. I had an open wound 4 inches long. On 9/11/2009, after repeated requests, I got a transfer to the medical tier because inmates kept stealing my gauze and bacitracin (anti-bacterial) for the wound. Medical would not renew my 'prescription' for it because I'd sued to get the surgery. I had little left. After accusing me of stealing it, #1094 threw it out. My wound was infected three months later at

3

> downstate. He threw out my commissary Tylenol. I had no meds.
> He also decided I had too much stuff, dumped out 3 garbage bags
> full my property (2 legal papers) all over the lobby floor for two
> hours, destroying my legal papers. He threw half my property,
> including legal papers, out. He said, 'Why do you have trial
> transcripts? Your lawyer has this crap. You don't need it.' When
> I filed a grievance, #1094 had another C.O. tell me I was going to
> the box in retaliation.

(Am. Compl. at 93-94 (emphasis in original)). According to plaintiff, he "lost incalculable research, and the remaining papers, including a motion he was about to file in court, were destroyed" as a result of Totten's actions. (Pl.' Narr. Stmt. at 5).

On September 14, 2009, plaintiff filed a grievance regarding the September 11, 2009 incident involving Totten (the "September 2009 Grievance") in which he complained that his Tylenol was taken and his legal papers searched.[3] (Pl.' Ex. D). In response to the grievance, plaintiff received a new supply of Tylenol and "Sergeants on the floor [were] advised that corrections officers may search through legal papers but are not to read items they know to be legal documents." (Defs.' Narr. Stmt. at 3). Plaintiff signed the September 2009 Grievance form, acknowledging his acceptance of the disposition. (Pl.' Ex. D). Plaintiff did not appeal the disposition of the September 2009 Grievance. (Defs.' Narr. Stmt. at 3).

II.    Standard of Review

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment

---

[3]    Plaintiff filed two (2) grievance forms in connection with this incident, collectively referred to herein as the "September 2009 Grievance." The September 2009 Grievance is attached to plaintiff's opposition, along with three (3) other grievances filed by plaintiff, as Exhibit D. Plaintiff did not specifically identify Totten in the September 2009 Grievance "out of respect." (Pl.' Ex. D).

4

motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009) (quotation marks and citation omitted); *see also Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). If this burden is met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. In order to defeat summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal quotation marks and citations omitted); *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) ("At the summary judgment stage, a nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'") (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)).

II.    Analysis

      A.  Claims Against Leykis, Saladino, Urban, and Pelletier

            1.  Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") prohibits a prisoner in any jail, prison, or correctional facility from initiating an action "with respect to prison conditions under section 1983 . . . or any other Federal law" "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 522, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

To determine whether a plaintiff may be excused for failing to exhaust administrative remedies as required by the PLRA, the Court must consider whether:  (1) administrative remedies were, in fact, "available" to the prisoner; (2) the defendants are estopped from raising the non-exhaustion defense by failing to preserve it or by taking affirmative action to inhibit the plaintiff's pursuit of available remedies; and (3) special circumstances "have been plausibly alleged" to excuse the plaintiff's failure to comply with the applicable procedural requirements, such as a reasonable misunderstanding of the grievance procedures. *Hemphill v. New York*, 380 F.3d 680, 686, 689 (2d Cir. 2004); *see also Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006).

The S.C.C.F. has a formal three-step grievance procedure to address inmate complaints, which is mandated by the New York State Commission of Corrections. *See* Affidavit of Matthew Bogert, Defs.' Ex. B ("Bogert Aff.") ¶ 3; *see also* 9 N.Y.C.R.R. § 7032.1 *et seq.*; 7 N.Y.C.R.R. § 701.1 *et seq.*; N.Y. Corr. Law § 139.  Each inmate is provided with the Suffolk

6

County Correctional Facility Rules & Regulations (the "Inmate Handbook"), which sets forth the S.C.C.F's three-step grievance procedure. Bogert Aff. ¶¶ 4-5; Defs.' Ex. C. First, an inmate may complain to the correctional officer on their cell block. Defs.' Ex C at 15. Second, if dissatisfied with the outcome of the first step, the inmate may submit a formal grievance within five (5) days of the incident. *Id.* at 14-15. Third, the inmate may appeal the grievance board's decision of the formal grievance. *Id.* at 15.

Defendants have provided evidence, and plaintiff does not dispute, that plaintiff never filed a grievance with respect to the incidents involving Leykis, Saladino, Urban, and Pelletier. *See* Bogert Aff. ¶ 6. Plaintiff argues that his failure to comply with the PLRA's exhaustion requirement should be excused because: (1) procedural obstacles, including access to grievance forms, prevent inmates at S.C.C.F. from filing grievances; and (2) he "knew that filing a Grievance would result in further harm to his health and further destruction to his property."[4] Plaintiff's Opposition to the Defendants' Motion for Summary Judgment ("Opp.") [Docket Entry No. 91-9], at 5.

a.   Availability of Grievance Procedures

Plaintiff does not allege that he requested, and was denied, a grievance form following each of the incidents involving Leykis, Saladino, Urban, and Pelletier. Instead, plaintiff generally refers to "specific exchanges . . . with COs when asking for grievance forms," but fails to identify the underlying incidents for which he requested the forms, the corrections officers

---

[4]     This argument is construed as raising both the issue of whether grievance procedures are functionally available, and the issue of whether defendants' actions estop them from asserting the non-exhaustion defense. "[T]he question of whether the defendants' actions estop the defendants from asserting the plaintiff's failure to exhaust as an affirmative defense overlaps with the question of whether grievance procedures are functionally available to the inmate." *Contino v. City of N.Y.*, No. 11 Civ. 8537, 2013 WL 4015816, at *6 (S.D.N.Y. Aug. 7, 2013) (citing *Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004)). Such is the case here.

with whom he spoke, or when these alleged exchanges occurred. These unsubstantiated allegations do not demonstrate any affirmative actions by defendants which prevented plaintiff from filing grievances relating to the incidents with Leykis, Saladino, Urban, and Pelletier.

Furthermore, plaintiff's allegation that he was denied access to grievance forms is belied by the fact that he obtained, and filed, five (5) grievance forms while incarcerated at the S.C.C.F. Moreover, even if plaintiff was unable to obtain official grievance forms, New York law permits the filing of grievances on any plain piece of paper. 7 N.Y.C.R.R. § 701.5(a)(1) ("If this [grievance] form is not readily available, a complaint may be submitted on plain paper.").[5] Given plaintiff's failure to make reasonable attempts to file grievances at any time regarding the incidents involving Leykis, Saladino, Urban, and Pelletier, on an official form or otherwise, his allegation that official grievance forms were unavailable does not excuse his failure to exhaust administrative remedies. *See Tomony v. Cnty. of Suffolk*, No. 10 Civ. 5726, 2013 WL 55821, at *6 (E.D.N.Y. Jan. 3, 2013); *see also Jones v. Smith*, 266 F.3d 399, 400 (per curiam) (affirming dismissal where plaintiff, who "admitt[ed] that no grievance had been filed because his counselor did not give him a grievance form," did "not allege that there was no other source for obtaining a grievance form or that he made any other attempt to obtain a form or to file a grievance without a form").

---

[5]   Plaintiff's own submissions demonstrate his knowledge of Section 701.5. In addition to permitting filing of grievances on plain paper, Section 701.5(a)(1) also provides that Department of Corrections inmates must submit a grievance within twenty-one (21) days of the incident. 7 N.Y.C.R.R § 701.5(a)(1). Plaintiff suggests that the Department of Corrections' twenty-one (21) day limitations period should apply to inmates at S.C.C.F, instead of the five (5) day limitations period of county jails set forth in 9 N.Y.C.R.R. § 7032.4. *See* Opp. at 6 ("It is Plaintiff's belief that the grievance procedure outlined in NYS Correction Law and NYCRR applies to *all* New York State Correctional Facilities regardless of whether they are state or local facilities."). However, plaintiff did not file a grievance within the twenty-one (21) day period.

Plaintiff also relies on *Hemphill v. New York*, arguing that he was "sufficiently frightened as to render the normal grievance procedures unavailable." 380 F.3d 680, 688 (2d Cir. 2004). However, the "test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Id.* While plaintiff contends that "any reasonable person of average intelligence [would conclude] that filing a complaint of any sort against a specific CO over a specific incident would result in harm to Plaintiff's health," Opp. at 4, plaintiff's submissions demonstrate that other inmates *actually used* the grievance procedures to assert claims of excessive force and destruction of property and legal papers,[6] the same claims plaintiff asserts in this action. *See Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. July 1, 2011) (plaintiff's fear of retaliation, in the absence of allegations of "any specific threats related to the grievance procedures," were insufficient to satisfy objective test of whether threats rendered grievance procedures unavailable); *but see Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004) (administrative remedies deemed unavailable where defendants failed to implement multiple favorable rulings obtained by plaintiff by repeatedly filing grievances regarding the same issue). Accordingly, plaintiff has failed to establish that the normal grievance procedures at the S.C.C.F. were unavailable.

b. Estoppel

A prisoner may invoke the doctrine of estoppel to excuse his non-exhaustion of administrative remedies when "defendants took affirmative action to prevent him from availing himself of grievance procedures." *Amador v. Andrews*, 655 F.3d 89, 103 (2d Cir. 2011) (quoting *Ruggiero*, 467 F.3d at 178); *see e.g., Ziemba v. Wezner*, 336 F.3d 161, 162 (2d Cir. 2004)

---

[6]   *See* Pl.' Ex. E; Opp. at 10 (describing non-plaintiffs' grievances that "COs assaulted me" and "COs destroyed my property and legal papers during a cell search").

(holding defendant's exhaustion defense subject to estoppel where prisoner claims he was beaten, threatened, and denied grievance forms and writing materials); *Hemphill*, 380 F.3d at 687 (holding that a defendant's exhaustion defense is subject to estoppel where prisoner specifically alleged that officers threatened him with retaliation if he pursued particular grievance). Plaintiff does not allege that any of the individual defendants threatened him with retaliation or specifically prevented him from filing a grievance. *See Ruggiero*, 467 F.3d at 178 (affirming summary judgment where plaintiff "does not allege beatings or threats of retaliation for filing a grievance or that he made any attempt to file a grievance and was denied that opportunity" and "plaintiff points to no affirmative act by prison officials that would have prevented him from pursuing administrative remedies").

Plaintiff claims that the incidents themselves, "on top of the general backdrop of 'live in fear of CO's on a daily basis," caused him to "fear retaliation for grieving the incidents in his Amended Complaint." Opp. at 9.[7] Plaintiff argues that from his experiences, he learned not to "draw attention to yourself by filing a grievance, asking for medical treatment, or making any other complaint." *Id.* at 4. However, these unsupported contentions do not to justify an exception to the PLRA's exhaustion requirement. *See Contino v. City of N.Y.*, No. 11 Civ. 8537, 2013 WL 4015816, at *6 (S.D.N.Y. Aug 7, 2013) (Plaintiff's "conclusory assertion that he feared retaliation if he completed the grievance process is insufficient to excuse his obligation to exhaust the administrative grievance process."); *Brown v. Napoli*, 687 F. Supp. 2d 295, 297

---

[7]    Specifically, plaintiff argues that if Leykis "assault[ed] Plaintiff for *not hearing his call*," "what is he going to do when Plaintiff targets him with a grievance that specifically names him and could damage his career? Do the math." Opp. at 4. Similarly, plaintiff asks, "What's [Saladino] going to do when Plaintiff *targets* this CO with a grievance?" *Id.* With respect to Pelletier, whom plaintiff claims facilitated an assault upon plaintiff by another inmate, plaintiff asks: "Plaintiff should then draw more fire on himself by filing a grievance naming the CO after the third assault involving a CO on him in less than a year??!" *Id.* at 5. Plaintiff claims that "[e]ven without a grievance, [Urban] was retaliating against Plaintiff," "[s]o Plaintiff should draw more fire *with* a grievance?" *Id.*

(W.D.N.Y. 2009) ("In the absence of [specific facts], plaintiff's mere allegation of a generalized fear of retaliation is insufficient to excuse his failure to file a grievance concerning these matters."); *Harrison v. Stallone*, No. 06 Civ. 902, 2007 WL 2789473, at *6 (N.D.N.Y. Mar. 29, 2012) ("If every plaintiff bringing a retaliation claim could have the exhaustion requirement excused by alleging a fear of further retaliation, it would create a general exception to exhaustion for retaliation claims."). Accordingly, plaintiffs' claims against Leykis, Saladino, Urban, and Pelletier are barred by the PLRA.

    B. Claim Against Totten

Although plaintiff filed the September 2009 Grievance regarding the incident with Totten, plaintiff did not appeal its disposition as required by the S.C.C.F. grievance policy. *See* 9 N.Y.C.R.R. § 7032.4. Accordingly, plaintiff failed to exhaust the grievance procedures in connection with his claim against Totten. *Contino*, 2013 WL 4015816, at *4 ("Where the prison's procedures permit appeal of an adverse ruling, to exhaust the available procedures a prisoner must file an appeal.") (citing *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). Therefore, plaintiff's claim against Totten must be dismissed.

Assuming *arguendo* that plaintiff had exhausted the grievance procedure, plaintiff's claim against Totten must nevertheless be dismissed. As defendants note, and plaintiff concedes, plaintiff's allegation that Totten improperly searched and destroyed his legal folders and documents apparently seeks to claim a denial of meaningful access to the court. "To state a claim that his constitutional right to access the court was violated, plaintiff must allege facts demonstrating that defendants deliberately and maliciously interfered with his access to the courts, and that such conduct materially prejudiced a legal action he sought to pursue." *Covino v. Reopel*, 108 F.3d 1369 (Table), 1997 WL 138856, at *1 (2d Cir. May 18, 1997) (quoting *Smith*

*v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995).

Plaintiff does not even allege, much less produce any evidence, that Totten's conduct "materially prejudiced a legal action he sought to pursue." *Id.* Plaintiff concludes that "the research he lost due to C.O. Totten's *illegally discarding* Plaintiff's legal papers did in fact materially prejudice him" because "what was lost would have made the pivotal difference in both his criminal and civil litigation." Opp. at 14. Plaintiff provides no specific facts to support this conclusory assertion. *See Key v. Fisher*, No. 05 Civ. 10461, 2007 WL 2522352, at *6 (S.D.N.Y. Sep. 6, 2007) (material prejudice not established where plaintiff did not specifically explain how items destroyed by officers frustrated his efforts to pursue his appeal); *Odom v. Poirier*, No. 99 Civ. 4933, 2004 WL 2884409, at *9 (S.D.N.Y. Dec. 10, 2004) ("Plaintiff's conclusory allegations that the defendants' caused him irreparable harm in his ability to litigate his state and federal claims or that the loss of these legal materials caused him irreparable harm to exercise his rights of access to the courts are simply insufficient to state a claim.") (citation omitted). Plaintiff's contention that he "lost incalculable research, and the remaining papers, including a motion he was about to file in court, were destroyed," at most establishes that plaintiff was temporarily inconvenienced by Totten's actions. Pl.' Narr. Stmt. at 5; *see Smith*, 901 F. Supp. at 649 (holding plaintiff's allegations that legal work was destroyed at most "supports the conclusion that he was temporarily inconvenienced by the loss of his papers," which "does not violate a constitutional right"); *Covino*, 1997 WL 138856, at *1 ("[Plaintiff] cannot establish a constitutional violation by simply claiming that prison officials destroyed his legal papers; instead he must demonstrate that the misconduct actively hindered his efforts to pursue a legal claim."); *Cancel v. Goord*, No. 00 Civ. 2042, 2002 WL 171698, at *4 (S.D.N.Y. Feb. 4, 2002) ("A mere delay in beling able to work on legal action does not rise to the level of a constitutional

violation.") (citing *Herrera v. Scully*, 815 F. Supp. 713, 725 (S.D.N.Y. 1993)). This is insufficient to establish material prejudice. Accordingly, plaintiff's claim against Totten must be dismissed.

c. Municipal Liability

Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven,* 691 F.3d 72, 80 (2d Cir. 2012). In order to prevail on such a claim against a municipal defendant, the plaintiff must establish as a prerequisite an underlying constitutional violation on the part of individual municipal actors. *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (*Monell* "*extends* liability to a municipal organization where . . . the policies or customs that [the organization] sanctioned, led to an independent constitutional violation."); *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (same). Plaintiff has failed to establish that the defendants deprived him of his constitutional rights. Accordingly, plaintiff has not demonstrated an underlying constitutional violation to which *Monell* liability can extend.

To support his *Monell* claim, plaintiff concludes that the County "ignored known violations of inmates' civil rights regarding the use of assault and excessive force by CO's on its inmates, and that it ignored CO violations of inmates' right of access to the courts by destroying inmates' legal papers." Opp. at 14. However, "[c]onclusory allegations of municipal liability will not defeat a motion for summary judgment on a *Monell* claim." *Sheikh v. City of N.Y., Police Dep't*, No. 03-CV-6326, 2008 WL 5146645, at *11 (E.D.N.Y. Dec. 5, 2008). Furthermore, plaintiff has presented no admissible evidence to support his conclusions that the County has a custom or policy to instruct corrections officers to use excessive force or destroy

13

inmates' property. Plaintiff argues he "would of course testify to these events" and "has submitted a list of 30-odd potential witnesses who can testify to both the general daily occurrences of constitutional violations in SCCF as well as some who can testify to the specific instances described in Plaintiff's complaint *because they witnessed them.*" Opp. at 16. However, this does not constitute "hard evidence" upon which the Court may rely in ruling on a motion for summary judgment. *See Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (nonmoving party must present "hard evidence" to defeat motion for summary judgment). Because "there is simply no evidence in the record to support a *Monell* claim against the County," the County is entitled to summary judgment on plaintiff's *Monell* claim. *Carter v. Cnty. of Suffolk*, No. 12-CV-1191, 2013 WL 6224283, at *4 (E.D.N.Y. Dec. 2, 2013).

Plaintiff also argues that the County "failed to properly train, supervise, and above all *discipline*, it's [sic] corrections officers thereby creating an environment that encouraged these violations because the COs know they never have to fear accountability for their actions." Opp. at 14. However, these allegations are insufficient to establish a municipal custom or policy to sustain a *Monell* claim. *See Genovese v. Shampton*, 921 F. Supp. 2d 8, 25 (E.D.N.Y. 2013) ("[V]ague and conclusory assertions that the Town should have known that officers would encounter these situations, and that the Town did not adequately train officers to properly respond . . . without any actual supporting evidence, are insufficient to adequately plead a *Monell* claim."); *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) ("[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury."), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Accordingly, plaintiff's *Monell* claim is dismissed.

III.    Conclusion

For the foregoing reasons, defendants' motion seeking summary judgment

dismissing the amended complaint pursuant to Federal Rule of Civil Procedure 56 is granted.

Plaintiff's amended complaint is dismissed in its entirety with prejudice.

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: December 13, 2013
       Central Islip, New York

15